**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JERMANE PETTIGREW | ) | |
| | ) | Case Number: 1:18-cv-04549 |
| v. | ) | Judge Presiding: Matthew F. Kennelly |
| | ) | |
| PRIORITY STAFFING, LTD. | ) | |

**ANSWER TO COMPLAINT**

Defendant, Priority Staffing, Ltd., by its attorneys, Mahoney, Silverman & Cross, LLC, for its answer states:

**Parties, Jurisdiction & Venue**

1. Plaintiff, JERMANE PETTIGREW, ("Pettigrew"), is a natural person and citizen of the State of Illinois, Residing in Joliet.

**ANSWER**: Defendant admits the allegations in paragraph 1.

2. Defendant, PRIORITY STAFFING, LTD., is an employer as that term is defined by 42 U.S.C. 2000e(b) and the ADA, 42 USC § 12101, *et seq,* and employed individuals, including Pettigrew, in the county in which this federal court is located.

**ANSWER**: Defendant admits the allegations in paragraph 2.

3. Defendant maintains a business location at 1314 Houbolt Rd. in Joliet, Illinois.

**ANSWER:** Defendant admits the allegations in paragraph 3.

4. Jurisdiction exists in this Court under 28 U.S.C. 1331 and 28 U.S.C. 1343, because this case involves causes of action that arise under federal law; specifically, interpretation of 42 USC § 200E *et seq.* (Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991) and the Americans with Disabilities Act, 42 USC § 12101, *et seq.*, and because it seeks redress to recover damages or secure equitable relief under Acts of Congress providing for the protection of civil rights.

**ANSWER:** Defendant admits the allegations in paragraph 4.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant resides here; and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

**ANSWER:** Defendant admits the allegations in paragraph 5.

**Common Allegations**

6. Between March and July 2017, Defendant took a significant period of time to place Plaintiff with a job. He had to repeatedly follow up and inquire.

**ANSWER:** Defendant denies the allegations in paragraph 6. Further answering, in November 2016, Plaintiff was initially placed by Defendant at a warehousing position in Romeoville. However, Plaintiff did not show up for the first day of the assignment. When Defendant places an employee in a position and that employee does not show up for work, other employees are considered for open positions before an employee who has previously failed to show up for work. This was the case for Plaintiff. Nevertheless, Plaintiff was informed of a position being open on June 19, 2017. Plaintiff thereafter failed a drug test for this position. A week later, Plaintiff was allowed to re-take the drug test and, at that time, passed it. Thereafter, Defendant placed Plaintiff at TRT Intermodal on July 14, 2017.

7. Finally, in July 2017, Plaintiff was placed at TRT Intermodal.

**ANSWER:** Defendant admits the allegations in paragraph 7.

8. Plaintiff loved the work there, but at the end of August 2017, he was injured. Plaintiff's elbow was dislocated and he tore two ligaments in his wrist, which doctors need to re-attach.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to

whether Plaintiff loved the work. Defendant lacks knowledge or information to form a belief as to the extent of Plaintiff's injuries and the appropriate treatment for such injuries, but admits that Plaintiff was injured.

9. Due to Plaintiff's doctor's requests, he was on "light duty" at the Priority Staffing office.

**ANSWER:** Defendant admits the allegations in paragraph 9.

10. Part of the duties involved repetitive use of his wrist (for stapling and stamping), which aggravated Plaintiff's condition.

**ANSWER:** Defendant admits that the light duty work that Plaintiff was given included stapling and stamping. Defendant lacks knowledge or information sufficient to form a belief as to whether stapling and stamping aggravated Plaintiff's condition.

11. Plaintiff consulted with his doctor and was advised not to do that movement until after his corrective surgery.

**ANSWER:** Defendant lacks knowledge on information sufficient to form a belief as to what Plaintiff's doctor advised Plaintiff to do or not do. Defendant admits that Plaintiff provided a doctor's note that stated that Plaintiff should not perform repetitive motions. Further answering, Plaintiff's injury was to only one arm and thus would not have precluded him from stapling or stamping with the other arm.

12. When Plaintiff advised his supervisor, Dorothy (an older white woman), she became furious.

**ANSWER:** Defendant denies the allegations in paragraph 12.

13. In retaliation and for the purpose of humiliation, she sat Plaintiff in other rooms – literally segregating Plaintiff from the office space where everyone else worked.

**ANSWER:** Defendant denies the allegations in paragraph 13.

14. For instance, at one point Plaintiff was told to sit in the computer room, but then Plaintiff was also told if someone comes into that room he needed to leave because he would make them feel uncomfortable, or words to that effect.

**ANSWER:** Defendant denies the allegation in paragraph 14. Further answering, the "computer room" is one of the two closed-area offices. Such offices are used by employees processing confidential information (social security numbers, medical information, etc.) The "computer room" was frequently used for such purposes, and thus was not available to accommodate Plaintiff's personal request.

15. After Plaintiff complained to Dorothy's boss about the segregated placement, and the racially-charged comments, he was told to gather his belongings and come to the lobby and that's where he would be working from thereon. He was told "it's a nice day" and "to just sit out [t]here and enjoy the sun and watch the cars pass by." For the next several days Plaintiff would sit there, in his coat – cold because of when people come in – not being assigned to work and feeling like he was a "bum on display."

**ANSWER:** Defendant denies the allegation in paragraph 15. Further answering, Plaintiff was on occasion asked to sit in the lobby while a potential employee was using a computer for skills testing. The request for him to move was because he was repeatedly on his cell phone which was disrupting the skills testing.

16. It was further humiliation and retaliation for being black yet also having the audacity to have made a workers' compensation claim and request work accommodations.

**ANSWER:** Defendant denies the allegation in paragraph 16.

17. Plaintiff complained again (to Dorothy's boss, a white woman whose name Plaintiff

cannot recall), stating it was cold, and humiliating to sit in the front. He asked if he could just go back to the computer room. This was on December 26, 2017.

**ANSWER:** Defendant admits that Plaintiff complained about being in the front lobby. Further answering, Plaintiff was asked to be there when he was taking or making personal phone calls.

18. Plaintiff was told she would look into it.

**ANSWER:** Defendant denies the allegation in paragraph 18.

19. Then, on December 28, 2017, Plaintiff received a call from her (Dorothy's manager) where she stated she could no longer accommodate the Plaintiff, and so he was being terminated.

**ANSWER:** Defendant denies the allegation in paragraph 19. Further answering, Defendant had a posted policy against using cell phones for personal telephone calls in its office. Plaintiff continually violated this policy and spoke loudly when making or taking a personal call. He was repeatedly warned to stop taking personal calls. Then, he was asked to take personal calls in the reception area or outside the building. At first, Plaintiff complied with this request, but later became disruptive and protested against the cellphone policy. Because of Plaintiff's continued failure to follow the cellphone policy, his continued disruptive behavior, and a lack of light duty work that did not involve stapling or stamping, Defendant informed Plaintiff that Defendant would no longer be able to provide Plaintiff with light duty work.

20. Throughout all of the above, Dorothy would make remarks like why don't you get another doctor who will say you can work so you can support your family.

**ANSWER:** Defendant denies the allegation in paragraph 20.

21. Dorothy also made disparaging remarks about how black people just want welfare,

and she doesn't understand why black people always try to not work and live off the government, or words to that effect.

**ANSWER:** Defendant denies the allegation in paragraph 21.

22. Also, Plaintiff was subjected to unequal terms and conditions such as being excluded from the kitchen to warm his food on a lunch break. This was because Liz (a white woman) claimed she did not want to be around Plaintiff. As the only black person in the office this made Plaintiff feel very uncomfortable and like he had to defend the entire race.

**ANSWER:** Defendant denies the allegation in paragraph 22.

23. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, on January 23, 2018, which was within 300 days of allegedly discriminatory employment actions occurring between March and July of 2017, August and December of 2017, and December 28, 2017 (date of termination). The charge was assigned charge number 440-2018-02640.

**ANSWER:** Defendant admits the allegation in paragraph 23.

24. The EEOC issued a "Right to Sue" letter on April 6, 2018, which was received by Plaintiff several days later.

**ANSWER:** Defendant admits the allegation in paragraph 24.

25. This action is filed within 90 days of Plaintiff's receipt of the "Right to Sue" letter.

**ANSWER:** Defendant admits the allegation in paragraph 25.

**COUNT I**
***Unequal Terms and Conditions of Employment, Due to Race & Color***
***(Aug. 2017 – Dec. 2017)***

26. Plaintiff incorporates paragraphs 1-25 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answers to paragraphs 1 through 25 as its answer

to paragraph 26.

27. Plaintiff's race is black.

**ANSWER:** Defendant admits the allegation in paragraph 27.

28. Plaintiff's performance met Defendant's reasonable expectations.

**ANSWER:** Defendant denies the allegation in paragraph 28.

29. Plaintiff was qualified to perform his job.

**ANSWER:** Defendant denies the allegation in paragraph 29.

30. From August through December 2017, Plaintiff was subjected to unequal terms and conditions of employment where he was assigned to punishment posts, and segregated from other employees for the purpose of humiliating him and retaliating against him for making a workers' compensation claim and thus revealing himself to be (in Defendant's eyes) just another lazy black man who doesn't want to work but just get money from the government.

**ANSWER:** Defendant denies the allegation in paragraph 30.

31. Similarly-situated non-black employees were not subjected to these terms and conditions of employment.

**ANSWER:** Defendant denies the allegation in paragraph 31.

32. Plaintiff has been the victim of unlawful discriminatory conduct in the workplace. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendant on the basis of his race. These employment actions were unlawful in violations of Title VII, 42 USC 2000e-2(a).

**ANSWER:** Defendant denies the allegation in paragraph 32.

33. Plaintiff has been made to suffer emotional distress and loss of employment and wages and benefits as the direct and proximate result of his civil rights violations as alleged herein.

Plaintiff is reasonably certain to suffer these damages in the future. Plaintiff is entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. 1981a.

**ANSWER:** Defendant denies the allegation in paragraph 33.

**COUNT II**
***Unequal Terms and Conditions of Employment, Due to Disability***
**(Aug. 2017 – Dec. 2017)**

34. Plaintiff incorporates paragraphs 1-25 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answers to paragraph 1 through 25 as its answer to paragraph 34.

35. Plaintiff became disabled due to injury and needed reasonable accommodations.

**ANSWER:** Defendant denies the allegation in paragraph 35.

36. With accommodation, Plaintiff would have been able to perform light office duty until his surgery.

**ANSWER:** Defendant denies the allegation in paragraph 36. Further answering, Plaintiff never asked for an accommodation and Defendant did not have sufficient light-duty work that did not include stapling and stamping.

37. At all times material hereto, Plaintiff was an individual with a disability within the meaning of section 3(2) of the Americans with Disabilities Act, 42 U.S.C. 12102(2).

**ANSWER:** Defendant denies the allegation in paragraph 37.

38. At all times material hereto, Plaintiff was a qualified individual with a disability as that term is defined by the ADA.

**ANSWER**: Defendant denies the allegation in paragraph 38.

39. From August through December 2017 Plaintiff was subjected to unequal terms and conditions of employment where he was assigned to punishment posts, and segregated from other

employees for the purpose of humiliating him and retaliating against him for being disabled and making a workers' compensation claim. This was coupled with discrimination based on Plaintiff's race and fueled by a stereotype that Plaintiff is just another lazy black man who doesn't want to work but just get money from the government.

**ANSWER:** Defendant denies the allegation in paragraph 39.

40. Section 102 of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

**ANSWER:** Defendant denies the allegation in paragraph 40.

41. Defendant violated the ADA as alleged herein, and also additionally by specifically: limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee.

**ANSWER:** Defendant denies the allegation in paragraph 41.

42. Defendant's actions as alleged herein constitute discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. 12132 and its implementing regulations.

**ANSWER:** Defendant denies the allegation in paragraph 42.

43. Similarly-situated non-disabled and non-black employees were not subjected to these terms and conditions of employment.

**ANSWER:** Defendant denies the allegation in paragraph 43.

**COUNT III**
***Unequal Terms and Conditions in Retaliation for Making Complaint About Discrimination***
**(Aug. 2017 – Dec. 2017)**

44. Plaintiff incorporates paragraphs 1-25, 27-33, and 35-43 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answers to paragraphs 1-25, 27-33, and 35-43 as its answer to paragraph 44.

45. Plaintiff complained to his supervisors about being subjected to unequal terms and conditions due to his race and disability.

**ANSWER:** Defendant denies the allegation in paragraph 45.

46. Plaintiff's performance met Defendant's expectations.

**ANSWER:** Defendant denies the allegation in paragraph 46.

47. From August through December 217 Plaintiff was retaliated against for complaining to the supervisor about his unequal treatment. In response, the treatment was made worse, for example being told to gather his things and being completely removed from the office to sit in the lobby and watch the cars pass by. Instead of remedying the unequal terms, the supervisor ratified the conduct and made it worse.

**ANSWER:** Defendant denies the allegation in paragraph 47.

48. Similarly-situated and other employees who did not assert their rights were not subjected to retaliation.

**ANSWER:** Defendant denies the allegation in paragraph 48.

49. Defendant's conduct violates Section 704(a) of Title VII, 42 U.S.C. 2000e-3(a).

**ANSWER:** Defendant denies the allegation in paragraph 49.

50. The effect of the events described above have been to deprive Plaintiff of equal employment opportunities in retaliation for exercising her federally protected rights.

**ANSWER:** Defendant denies the allegation in paragraph 50.

**COUNT IV**
***Discharged Due to Race & Color***
**Dec. 2017**

51. Plaintiff incorporates paragraphs 1-25 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answer to paragraphs 1 through 25 as its answer to paragraph 51.

52. Plaintiff is a black man. Plaintiff was the only black man in the staffing office.

**ANSWER:** Defendant admits the allegation in paragraph 52. Further answering, Defendant had numerous other black employees during all relevant times.

53. Plaintiff's performance met Defendant's expectations.

**ANSWER:** Defendant denies the allegation in paragraph 53.

54. On December 28, 2017, Dorothy's white female supervisor (whose name Plaintiff cannot recall) discharged Plaintiff. The reason cited was that "she could no longer accommodate [Plaintiff]."

**ANSWER:** Defendant denies the allegation in paragraph 54. Further answering, Defendant had a posted policy against using cell phones for personal telephone calls in its office. Plaintiff continually violated this policy and spoke loudly when making or taking a personal call. He was repeatedly warned to stop taking personal calls. Then, he was asked to take personal calls in the reception area or outside the building. At first, Plaintiff complied with this request, but later became disruptive and protested against the cellphone policy. Because of Plaintiff's continued failure to follow the cellphone policy, his continued disruptive behavior, and a lack of light duty work that did not involve stapling or stamping, Defendant informed Plaintiff that Defendant would no longer be able to provide Plaintiff with light duty work.

55. Similarly-situated non-black employees were not discharged under similar circumstances.

**ANSWER:** Defendant denies the allegation in paragraph 55.

**COUNT V**
***Discharged Due to Disability***
**Dec. 2017**

56. Plaintiff incorporates paragraphs 1-25 and 35-43 as though set forth fully herein. On December 28, 2017, Dorothy's white female supervisor (whose name Plaintiff cannot recall) discharged Plaintiff. The reason cited was that "she could no longer accommodate [Plaintiff]."

**ANSWER:** Defendant incorporates its answers to paragraphs 1-25 and 35-43 as its answer to paragraph 56.

57. Similarly-situated non-disabled employees were not discharged under similar circumstances.

**ANSWER:** Defendant denies the allegation in paragraph 57.

**COUNT VI**
***Discharged Due to Making Complaint About Discrimination***
**Dec. 2017**

58. Plaintiff incorporates paragraphs 11-25, 27-33, and 35-43 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answers to paragraphs 11-25, 27-33, and 35-43 as its answer to paragraph 58.

59. Plaintiff complained to his supervisors about being subjected to unequal terms and conditions due to his race and disability.

**ANSWER:** Defendant denies the allegation in paragraph 59.

60. On December 28, 2017, Dorothy's white female supervisor (whose name Plaintiff

cannot recall) discharged Plaintiff. The reason cited was that "she could no longer accommodate [Plaintiff]."

**ANSWER:** Defendant denies the allegation in paragraph 60. Further answering, Defendant had a posted policy against using cell phones for personal telephone calls in its office. Plaintiff continually violated this policy and spoke loudly when making or taking a personal call. He was repeatedly warned to stop taking personal calls. Then, he was asked to take personal calls in the reception area or outside the building. At first, Plaintiff complied with this request, but later became disruptive and protested against the cellphone policy. Because of Plaintiff's continued failure to follow the cellphone policy, his continued disruptive behavior, and a lack of light duty work that did not involve stapling or stamping, Defendant informed Plaintiff that Defendant would no longer be able to provide Plaintiff with light duty work.

61. People who did not assert their rights were not discharged.

**ANSWER:** Defendant denies that Plaintiff was discharged because he asserted his rights.

**COUNT VII**
***Failure to Hire / Place Employee***
**(March – August 2017)**

62. Plaintiff incorporates paragraphs 1-7 as though set forth fully herein.

**ANSWER:** Defendant incorporates its answers to paragraphs 1 through 7 as its answer to paragraph 62.

63. Plaintiff was hired in March of 2017, but not placed on a job until July and only after repeated requests and follow-up.

**ANSWER:** Defendant denies the allegations in paragraph 63. Further answering, In November 2016, Plaintiff was initially placed by Defendant at a warehousing position in

Romeoville. However, Plaintiff did not show up for the first day of the assignment. When Defendant places an employee in a position and that employee does not show up for work, other employees are considered for open positions before an employee who has previously failed to show up for work. This was the case for Plaintiff. Nevertheless, Plaintiff was informed of a position being open on June 19, 2017. Plaintiff thereafter failed a drug test for this position. A week later, Plaintiff was allowed to re-take the drug test and, at that time, passed it. Thereafter, Defendant placed Plaintiff at TRT Intermodal on July 14, 2017.

64. Based on race-related remarks that were made after Plaintiff started working in the office in August 2017, Plaintiff believes that the failure to place him promptly was due to racial bias on the part of Liz, Dorothy, and her supervisor – all white women.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff believes. Defendant denies the remaining allegations in paragraph 64.

65. Non-black employees were placed for jobs much more promptly than Plaintiff.

**ANSWER:** Defendant admits that other black employees and non-black employees were placed for jobs more promptly after November 2016 than Plaintiff. Further answering, In November 2016, Plaintiff was initially placed by Defendant at a warehousing position in Romeoville. However, Plaintiff did not show up for the first day of the assignment. When Defendant places an employee in a position and that employee does not show up for work, other employees are considered for open positions before an employee who has previously failed to show up for work. This was the case for Plaintiff. Nevertheless, Plaintiff was informed of a position being open on June 19, 2017. Plaintiff thereafter failed a drug test for this position. A week later, Plaintiff was allowed to re-take the drug test and, at that time, passed it. Thereafter, Defendant placed Plaintiff at TRT Intermodal on July 14, 2017.

MAHONEY, SILVERMAN & CROSS, LLC

By: __James A. Murphy__________
One of the Attorneys for Plaintiff

James A. Murphy – Atty. No. 06195324
Marron A. Mahoney – Atty. No. 6293279
**MAHONEY, SILVERMAN & CROSS, LLC**
822 Infantry Drive, Suite 100
Joliet, Illinois 60435
T: (815) 730-9500 / F: (815) 730-9598
E-mail: jmurphy@msclawfirm.com